FILED
2006 Jan-26  AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **GARY HAMMOND, et al.,** } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 3:01-CV-0811-VEH |
| } | |
| **THE REYNOLDS METALS** } | |
| **COMPANY PENSION PLAN** } | |
| **FOR HOURLY EMPLOYEES, et** } | |
| **al.,** } | |
| } | |
| Defendants. } | **CONSOLIDATED WITH** |
| _____ } | |
| } | |
| **THOMAS L. DAWSON, et al.,** } | |
| } | |
| Plaintiffs, } | |
| } | Case No.: 3:01-CV-0815-VEH |
| v. } | |
| } | |
| **REYNOLDS METALS** } | |
| **COMPANY,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Pending before the Court are cross motions

for summary judgment.[1]  Defendants Reynolds Metals Company ("Reynolds"), The Reynolds Metals Company Pension Plan for Hourly Employees (the "Pension Plan"), and The Reynolds Metals Company Supplemental Unemployment Benefit Plan (the "SUB Plan") filed their motion (Doc. #123) on March 1, 2005.[2]  Plaintiffs Gary Hammond, Michael Whitten, Thomas L. Dawson, and Jimmy C. Reed filed their motion (Doc. #124) on the same date.[3]  As discussed below, Reynold's Motion for Summary Judgment is due to be granted in part and denied in part.  Plaintiffs' Motion for Summary Judgment is due to be denied.

## II.   LITIGATION BACKGROUND[4]

---

[1] Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996).  The Court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

[2] For ease of reference, sometimes all named defendants are collectively referred to by the Court as "Reynolds."

[3] Also pending before the Court is a motion to strike (Doc. #134) filed by Plaintiffs on April 15, 2005, a motion to strike (Doc. #141) filed by Defendants on May 16, 2005, and a motion to amend (Doc. #143) filed by Plaintiffs on May 16, 2005.  The Court addresses these motions by way of a separate order.

[4] The Court uses a simple litigation background section as the nature of its opinion on summary judgment does not necessitate a conventional statement of undisputed and/or disputed facts.

This purported class action arises out of Reynolds' sale of its manufacturing facilities in the Shoals area of Alabama to Wise Alloys, LLC and/or Wise Metals Co., Inc. ("Wise") in March of 1999. The four named plaintiffs are former union-represented hourly employees, whose employment relationships with Reynolds ended on March 31, 1999, in connection with the sale of Reynolds' alloys facilities to Wise. These former Reynolds employees subsequently accepted full-time employment with Wise. The heart of this lawsuit involves a dispute over the benefits payable to Plaintiffs under the Pension and SUB Plans as a result of their ceasing to be employees of Reynolds. As a result of prior rulings by the Court, the substantive claims that remain pending against Reynolds are count three for breach of fiduciary duty, count five for Pension Plan benefits, and count six for SUB Plan benefits.[5] (Doc. #59 ¶¶ 61-66, 72-82).

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always

---

[5]Count seven is a claim for reasonable attorney's fees. (Doc. #59 ¶ 84).

bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears

the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's

case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV. ANALYSIS

### A. Fiduciary Claims

Plaintiffs' fiduciary claims premised upon the interplay of § 1104 and § 1109 of ERISA fail as a matter of law because they really amount to an effort to recover for the payment of individual benefits under the Pension and SUB Plans.[6] These provisions do not provide Plaintiffs with the proper platform for suing to recover plan benefits—instead, civil enforcement is appropriately and exclusively under § 1132(a)(1)(B) of ERISA, which provision Plaintiffs have expressly relied upon in

---

[6]Count three of Plaintiffs' Second Amended Complaint expressly raises a claim for breach of fiduciary duty against Reynolds. (Doc. #59 ¶¶ 61-66).

counts five and six of their Second Amended Complaint. (Doc. #59 ¶¶ 72-82).

29 U.S.C. § 1132 sets forth the civil enforcement provisions of ERISA, and states in part:

> (a) Persons empowered to bring a civil action
> A civil action may be brought--
> > (1) by a participant or beneficiary--
> > > (A) for the relief provided for in subsection (c) of this section, or
> > > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> > (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;[7]
> > (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

Further, 29 U.S.C. § 1109 provides:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made

---

[7]"29 U.S.C. § 502(a)(2) refers to appropriate relief under § 1109 of Title 29, the codified version of § 409 of ERISA." *Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1419 n.11 (11th Cir.1998).

through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

Therefore, in contrast to § 502(a)(1)(B) actions that seek individual relief, § 502(a)(2) claims are not intended to vindicate the rights of individuals, but rather to obtain plan-wide relief. More specifically, in *Massachusetts Mut. Life Ins. Co v. Russell*, 473 U.S. 134, 139-40 (1985), the Supreme Court interpreted § 409's "other equitable or remedial relief" to exclude a remedy for individual damages. The Supreme Court further clarified that § 502(a)(2) chiefly provides an avenue for relief in the event that a plan fiduciary misuses or improperly manages plan assets. *Russell*, 473 U.S. at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.") (footnote omitted).

The Fourth Circuit summarized the *Russell* decision to mean that "any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries" and that suing for deliberate delay in the processing of a benefits claim

does not fall into that category. *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712, 715 (4th Cir. 1996) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *see, e.g., Crocco v. Xerox Corp.*, 137 F.3d 105, 107 n.2 (2d Cir. 1998) (recognizing that "§ 502(a)(2) creates right of action for plaintiffs suing for breach of fiduciary duty on behalf of the plan" and that "relief available under § 502(a)(3) [is limited] to traditional equitable remedies, which do not include compensatory damages"); *Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997) ("Nor could they proceed under ERISA § 502(a)(2) because that provision does not allow for individual recovery.") (citation omitted); *Adamson v. Armco*, 44 F.3d 650, 654 n.3 (8th Cir. 1995) (dismissing §§ 502(a)(2)-(3) claims as time-barred, but noting other potential applicable limitations to relief sought under these provisions); *Lee v. Burkhart*, 991 F.2d 1004, 1007 (2d Cir. 1990) ("[A]n action under Section 502(a)(2) may be brought only on behalf of a plan itself rather than for the benefit of an individual participant[.]") (citation omitted); *Hozier v. Midwest Fasterners, Inc.*, 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either § 409 or § 502(a)(2)."); *Bryant v. International Fruit Prods. Co.*, 886 F.2d 132, 135 (6th Cir. 1989) ("As the language regarding fiduciary duty suits in section 1109 [as asserted pursuant to § 1132(a)(2)] makes clear, ERISA

contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery thus goes to the plan."); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir. 1988) ("[T]he [*Russell*] Court concluded that Congress had created liability for breach of fiduciary duty [under § 1132(a)(2)] only in favor of the *plan*, and *not* in favor of individual beneficiaries.") (citation omitted) (emphasis in original).

As for any reliance by Plaintiffs upon § 1132(a)(3), the *Coyne* court, quoting in part a decision issued by the Fifth Circuit, reached a similar conclusion that the provision is "intended to address violations affecting a plan more generally" and does not extend to "wrongs suffered by individual [participants.]" Instead, the appropriate civil enforcement provision to use for obtaining benefits due under a plan is § 1132(a)(1)(B):

> As the Fifth Circuit put it, "Section 502(a)(3) provides for relief apart from an award of benefits due under the terms of a plan. When a beneficiary [or a participant] simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992).

*Coyne*, 102 F.3d at 715; *see also Lee*, 991 F.2d at 1011 ("The plain language of [§ 502(a)(3)] does not provide for monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase would include an award

of money damages."); *Drinkwater,* 846 F.2d at 825 ("[W]e conclude, as have the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, that extra-contractual damages are unavailable under § 1132(a)(3). We give our transcontinental imprimatur to the Ninth Circuit's simple, appealing expression of that conclusion:  '[I]t appears that Congress used the word 'equitable' [in § 1132(a)(3)] to mean what it usually means--injunctive or declaratory relief.'") (footnotes omitted).

Comparable to the *Coyne* case, the heart of this lawsuit is about the benefits that Plaintiffs maintain Reynolds has wrongfully withheld from them under the Pension and SUB Plans.  To allow for Plaintiffs to proceed against Defendants under § 1132(a)(3) would be an expansive reading of § 1132(a)(3) and would be contrary to the United States Supreme Court's interpretation of ERISA's civil enforcement provisions.  *Coyne*, 102 F.3d at 716 ("[I]n finding that section 502(a)(3) was a catchall provision, however, the Court stated that it provides 'equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.'") (quoting *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).

As the Supreme Court instructed in *Varity* regarding the limited parameters of individual relief afforded under § 1132(a)(3):

> We should expect the courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the

> inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

516 U.S. at 515 (internal and other citations omitted). Moreover, earlier in its analysis, the Supreme Court described ERISA's civil enforcement scheme to include a "safety net" based in part upon the presence of § 1132(a)(3):

> Such a reading is consistent with § 502's overall structure. Four of that section's six subsections focus upon specific areas, i.e., the first (wrongful denial of benefits and information), the second (fiduciary obligations related to the plan's financial integrity), the fourth (tax registration), and the sixth (civil penalties). The language of the other two subsections, the third and the fifth, creates two "catchalls," providing "appropriate equitable relief" for "any" statutory violation. This structure suggests that these "catchall" provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.

*Varity*, 516 U.S. at 512. Therefore, critical to the Supreme Court's decision in *Varity* to allow for individual breach of fiduciary duty claims under § 1132(a)(3) was the express recognition that the plaintiffs, in that particular case, had no other means of redress under ERISA. *Varity*, 516 U.S. at 515. ("They must rely on the third subsection [*i.e.*, § 1132(a)(3)] or they have no remedy at all.").

As the undersigned previously stated in a recent opinion involving the analysis of breach of fiduciary claims under §§ 1132(a)(2)-(3) of ERISA, a key question for

the Court to consider is what the real nature of the dispute concerns. Plaintiffs maintain that "Reynolds breached its fiduciary duties by misrepresenting certain pension and SUB-related information which plaintiffs relied on to their detriment." (Doc. #125 at 2). Similarly, Plaintiffs' Second Amended Complaint maintains that "Defendants breached their fiduciary duties to the Plaintiffs by structuring a sale of the Colbert County facilities in a manner intended to prevent the Plaintiffs from becoming eligible for pension and health benefits under the Pension Plan and the Reynolds group health plan." (Doc. #59 ¶ 65).

These allegations do not speak to injuries to a plan due to fiduciary mismanagement—indeed the Pension and SUB Plans are named defendants in the litigation. Instead, they focus on injuries to individuals—the detriment that Plaintiffs allegedly suffered was that they did not receive the benefits that they understood were due to be paid to them under the Pension and SUB Plans. Therefore, the underlying focus of the breach of fiduciary claim really relates to the recovery of benefits by individual participants. Moreover, Plaintiffs have an adequate remedy under ERISA for seeking the recovery of benefits wrongfully withheld, which they are actively pursuing in this case. Accordingly, Plaintiffs have failed to state a cognizable claim for breach of fiduciary duty under either § 502(a)(2) or alternatively (and to the extent sought) under § 502(a)(3) of ERISA.

### B.    Pension Plan and SUB Plan Benefit Claims

### 1.    Applicable Standard of Review

Defendants concede that the Pension Plan does not utilize the term "discretion." (Doc. #127 at 29). Instead, the pertinent language of the Pension Plan states that its administration "shall be in charge of the representatives of the Company who shall have such authority and perform such duties, as may be determined by [Reynolds]." (Doc. #126 at Ex. 3 at 37 § VII).

On the other hand, the summary plan description ("SPD") for the Pension Plan does contain discretionary language: the plan administrator has the "discretionary authority to interpret the terms of the Plan and to decide factual and other questions relating to the Plan and Plan benefits, including without limitation questions relating to eligibility for, entitlement to, and payment of benefits."[8] In the typical ERISA case, this language in the Pension Plan's SPD would be sufficient to bestow the administrator with full discretionary authority. *See, e.g., Cagle v. Bruner*, 112 F.3d 1510, 1516-17 (11th Cir. 1997) (finding appropriate reservation of discretion in plan's declaration of trust and trust rules and regulations document); *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989) (applying

---

[8]The language contained in the SUB Plan and the SUB Plan's SPD is comparable: the SUB Plan lacks express discretionary authority afforded to the administrator while the SUB's SPD employs it.

14

arbitrary and capricious standard of review based in part upon discretionary language included in plan's descriptive booklet).

However, the wrinkle in this case is that under Article XXII of the Collective Bargaining Agreement ("CBA"), the Pension Plan and the SUB Plan are incorporated into the CBA by reference (Doc. #126 at Ex. 4 at 27) and under Article XXXI, the CBA prohibits any modifications or changes unless "by mutual consent of the company and union or until terminated by either party as provided below." (*Id.* at 35). Similarly, the Pension Plan provides for specific procedures regarding proposed changes. (Doc. #126 at Ex. 3 at 39 § XIII). The SUB Plan also contemplates mutual consent of the parties with respect to revisions:

> Revisions in this Plan from the preceding Plan are effective on the dates agreed to between the Company and the Union with regard to a collective bargaining agreement which incorporates this Plan by reference, notwithstanding that earlier effective dates of revisions may be shown in the Plan.

(Doc. # 126 at Ex. 5 at 15 § 10).

It is undisputed that neither the language contained in the Pension Plan nor the SUB Plan was ever modified to include discretionary language; instead, only the respective SPDs were changed. Plaintiffs maintain that the insertion of discretionary language into the SPDs is ineffective as an amendment to either the Pension Plan or the SUB Plan based upon the Eleventh Circuit's reasoning in *Shaw v. Connecticut*

15

*General Life Ins. Co.*, 353 F.3d 1276 (11th Cir. 2003), and is similarly invalid under the terms of the CBA.

In *Shaw*, the summary plan document gave the claims administrator great deference, while the underlying insurance policy did not. 353 F.3d at 1282. Moreover, the policy set forth a specific procedure for making changes to the contract. *Id.* Finding that "the grant of discretionary authority to a plan administrator [was] a material term," the court expressed that for the term to be enforceable, the parties should have either included it initially in the underlying contract or amended the agreement to include it subsequently pursuant to their express modification procedures. 353 F.3d at 1283. As a result, the deference afforded to the administrator in the summary plan document was ineffective, and *de novo* review applied.

Therefore, based upon the Eleventh Circuit's decision in *Shaw*, and in the absence of any discussion of this issue in *Cagle*, *Jett*, and other similar cases, when the level of discretion afforded to an administrator in a summary plan description conflicts with that of the underlying plan document, if the underlying plan document contains an amendment or modification provision to which the parties have not adhered, then the level of discretion set forth in the plan document is controlling. Defendants have produced evidence of discretionary authority included in the SPDs but no evidence that these changes were ever incorporated into either Plan by mutual

16

consent in contravention of the Plans' provisions and those of the CBA. Therefore, because the language of the SPDs is ineffective and neither Plan contains the critical *Firestone* language,[9] the Court should apply the *de novo* standard of review. *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("When a plan is silent or ambiguous as to an Administrator's discretionary authority we will apply the *de novo* standard of review."). This analysis is also consistent with the disclaimer included on the Pension Plan's SPD:

> *Every attempt has been made to ensure that this summary plan description (SPD) accurately reflects the provisions of the Plan document. However, if the information contained in the SPD disagrees with the Plan document, the provisions of the Plan document will control.*

(Doc. #126 at Ex. 3 at 3).

### 2. Propriety of Summary Judgment

Based upon the record before it, the Court concludes that material factual disputes exist over Reynold's benefit determinations under both the Pension and SUB Plans when reviewing the decisions on a *de novo* basis. Put differently, the Court recognizes that reasonable minds might disagree on the issue of whether Reynolds

---

[9]The complete case citation is *Firestone Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989) (denial of benefits or interpretation of plan provisions is generally subject to *de novo* review unless plan bestows administrator with "discretionary authority to determine the eligibility for benefits or to construe the terms of the plan.")

was *de novo* wrong in its actions on Plaintiffs' benefits claims such that a trial on the merits is warranted. Accordingly, summary judgment is due to be denied as to Plaintiffs and Defendants with respect to claims for benefits under the Pension and SUB Plans.

### IV. CONCLUSION[10]

Defendants' Motion for Summary Judgment is due to be granted in part and denied in part. Plaintiffs' Motion for Summary Judgment is due to be denied. More specifically with respect to Plaintiff's breach of fiduciary count, Defendants have carried their burden on summary judgment of demonstrating no material factual disputes and entitlement to judgment as a matter of law. Therefore, Plaintiffs' breach of fiduciary claims are due to be dismissed. As it pertains to Plaintiffs' benefit claims under the Pension and SUB Plans, neither side has met its burden, and summary judgment is due to be denied. The Court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 26th day of January, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10]The Court anticipates scheduling a status conference with the parties to discuss their views on how best to proceed with this litigation in light of the Court's ruling on summary judgment and the pendency of Plaintiffs' purported class claims.